et al. Good morning, Judge Lynch, Chief Judge Lynch, excuse me, Judge Torello, and Judge Cayetta. My name is Philip Beauregard. I represent Carters. We are both located in New Bedford. What I'd like to point out to begin with is that I find that there is a large difference between the complaint that we filed and the response that was made by Nike in this case. The complaint that we filed goes into a whole range of what we say were illegal activities by Nike in terminating the relationship, which was a 27-year course of dealing between Carters and Nike that went along very profitably and very smoothly with respect to both, very successfully. And then all of a sudden, in the spring of this past year, 2013, there was a termination letter from Nike's. What the defendant, Nike, succeeded in doing, I believe, was to lead the district court into viewing our complaint, which alleged a series of, as I said, illegal activities by Nike in terminating, and narrowed those into what we call a termination letter or a document, which is the so-called terms and conditions of sale, which is contained in the appendix, and was made part of the complaint. Our complaint very specifically alleged, pardon me, that the relationship was partially, partially defined by a whole series of invoices. And when we're talking about invoices... But isn't your complaint dealing with the relationship between your client and the other party? Yes, it is, Your Honor. Well, isn't that exactly, well, not exactly, isn't that one of the two alternatives for the Foreign Selection Clause? According to the words of the invoice, it does say that it has some words to the effect of anything that has to do with the relationship. But that does not, I would suggest, Your Honor, and I think that's a very significant question in the case, that does not, in our view, take away the import and the effect of various Massachusetts statutes and laws that would apply in even a federal law. There are questions of the Uniform Commercial Code in terms of how long a notice needs to be given where there's no express written contract that governs the overall relationship. There's, of course, the Massachusetts Antitrust Act, Chapter 93, there's Chapter 93A, and, of course, the Robertson Patent Act. One, I would submit that there's no way that Nike, even though it would try, by virtue of this unnegotiated, unilateral, two-sided invoice, and it's an invoice, make no mistake, it's called a contract, but that's because the semantics have gradually evolved from terms and conditions of sale, which is the title of the document, and then when you read the final print of the agreement, they go on to say that it's that plus the order plus the credit account that together constitute, quote, unquote, the agreement. Well, now they've come halfway toward convincing someone that they have a contract that is defined by that very invoice, that that's the overall relationship. Well, they do, don't they? As a matter of law, when merchants exchange invoices, and you get the last invoice in, and you don't protest and you accept the goods, isn't it very commercial lawyer that you get the contract? I think that that's true, but what that means is that it goes from invoice to invoice. I think Carters would be in a hard place here to argue that after it got one, and there were approximately 20 to 30 invoices a month, orders, and then invoices, and every single time this invoice would appear, except I have an asterisk on that, it did change about two years ago. You're saying if you were suing over a breach of the agreement as it stood three years earlier, you wouldn't be bound by this term? No. I would say that Carters would be bound by virtue of having to accept the terms of the invoice for the next order that it placed, but not something that would stretch over the period of 27 years, and be characterized not just by the invoice, but by instructional materials, by promotional materials, by course of conduct, et cetera. Let me come back to you. You've got an invoice that you accepted. You didn't reject the goods that came with it, I assume, and it says flat out, you'll not initiate an action against Nike in any jurisdiction other than Oregon. So why doesn't that apply? We won't start an action that has to do with the subject matter of the order and the invoice. So we should read into that clause, it has to be an action based on this invoice? Yes. That's what my position would be. That's what our position would be. And it's the fair reading and the fair understanding, and we have to bring an element of the fairness of understanding that Carters would have. I'm not going to stand and argue that, well, they didn't read it and therefore they don't have to live with it. They are charged, I would concede, with reading the invoice and knowing what it is. But a reasonable reading of that invoice would not suggest to Carters that 27 years of steady, profitable, what amounted to one-third of their business by the time the relationship ended in 2013, that that would be governed by a clause that said forget about state antitrust law, forget about national antitrust law, forget about UCC law, and this document that has across the top terms and conditions of sale becomes not only that, but by virtue of final language in the invoice becomes an agreement, and then when it reaches Judge Woodlock it becomes a contract. There is no form clause in a contract in this case if you accept the premise that this invoice does not constitute a contract that governs a relationship that went on for two and a half decades. Counsel, may I ask something? You've mounted a full-blown attack on the merits of Judge Woodlock's opinion. Respectfully. Yes, of course. You also make the argument that you were entitled at least to an evidentiary hearing. We do. And on that ground I find that Your opponents say you never ask for that in front of Judge Woodlock and you can't change your view on that. They do say that, but they say that that was done by virtue of something that quite honestly came in, which was an agreement not to pursue discovery until the motion to dismiss was heard. The problem, and perhaps we didn't look at this full face and understand the nuances of that particular area of procedural law, but that 12b6 migrated, even though it was called a motion to dismiss, it migrated in 12b3, included. Well, just plain speaking, did you ask the district judge for an evidentiary hearing? I think the answer is not in so many terms. Is that correct? I can't approach that conclusion. Here's a third question. Judge Woodlock, taking advantage of a footnote in a Supreme Court opinion, went ahead under Rule 12b6 to evaluate this. Do you have any objection to that form of the rule being used here? My argument is not focused. The answer would be no. My argument is not focused on getting into that procedural battle, because I don't think that that really carries the day. What carries the day here goes back to very basic principle of documents speak for themselves, major titles on document called Terms and Conditions of Sale. All right. So if we accept there is a question about whether the invoice terms cover only the goods sought by that particular invoice, that's a pure issue of law, or it can be treated as a pure issue of law. I agree. What are the other mistakes that you think he made? The mistakes were to take, again, not to be repetitive, but to take something that is an invoice and then to treat it as if it's a negotiated contract with a form selection clause. I would submit that there are things in that invoice that you're going to see, including a one-year statute of limitations, if you will, a one-year limitation in the clause, contractual. You're going to see limitations that they can't be punitive damages. You're going to see limitations that your damages are limited to three months' worth of invoices or orders. How can one possibly say that if it turns out that Nike is indeed, with its $20 billion international operation, is doing this in restraint of trade? And that's something that we were looking at and heading toward, but how can you say that that's subject to those limitations in that invoice? It was a very fervent and hopefully not a successful attempt by Nike to, in effect, nullify Massachusetts law, which is really where this entire relationship was conducted for 27 years. Thank you very much. Mr. Stelakis. Good morning, Your Honor. I represent Nike, and I'd like to start with the record in this case, and that is the form selection clause itself. Carter's, it appears to me, has just agreed that the form selection clause governs. It just disputes what it means, and it might be helpful for me to read the exact language. It says, any action arising out of or in connection with the agreement is to be brought in Oregon. Carter's complaint, as pled, fits squarely within that form selection clause. Why does that clause distinguish between the relationship and the agreement? The governing law clause applies not just to disputes arising out of the agreement, but also to disputes arising out of the relationship between Nike and customer, says Oregon Law 5. But the form clause only applies to actions arising out of or in connection with the agreement. It omits the out-of-the-relationship language that's in the choice of law clause. So what's the reason for that? I don't believe that is in the record. My understanding of the law is... Just looking at the clause that you were reading to us. Yes, the form selection clause. The phrase arising out of or in connection with is, in fact, broader than the term that's used in the choice of law clause. As to why one phrase is used in one clause and one in the other, I don't have an answer to that. This should be a very simple appeal. In other words, Oregon law only applies to the agreement, but not to the issues of relationship. No, that's not what I'm saying. Well, I'm saying, it seems to me that's how it reads. I don't know if that's what Judge Kayada was leading to, but I certainly am. In terms of what law applies to the underlying claims, I think Oregon law will apply to all of the underlying claims. Why? The language doesn't seem to cover it. Well, I think it's broad enough. I think it's broad enough to cover it, but my point is that the form selection clause is even broader than that. So that is an argument that Cotters is free to have in Oregon. But they have agreed to this agreement. They attached it to their verified complaint. They swore that they complied with all the terms of the agreement, which include the terms that required them to know what the agreement is before ordering any goods. They accepted the goods. They never disputed the terms of the agreement. And as I said, they attached it to their verified complaint. None of the errors that they assert are preserved. They, as Judge Lynch noted, they never requested an evidentiary hearing. They attached documents to their opposition, the motion to dismiss, that we move to strike that they never opposed. Their entire appellate briefing before this court relies on those documents. They are simply not permitted to do an end run around their failure to ask for an evidentiary hearing by now saying that the district court erred by failing to hold one or by failing to convert the motion to dismiss to a motion for summary judgment, something else that was never requested. There's a lot of talk in the briefing about the Atlantic Marine case. And I think we've laid that out pretty well in our brief. What I did want to add was a recent decision from the Sixth Circuit on October 14th in the Smith case. And the citation for that is 769F3922, where the court upheld dismissal under 12B6 rather than transfer under Section 1404A because transfer was never sought. Thank you. In addition, put that in a Rule 28J letter within one week. Absolutely. And if there's any other pertinent law newly decided, we'll take it from both parties. Thank you, Your Honor. I believe that the argument has been addressed very well in the briefing. If this court has any other questions, I'm happy to answer them. Otherwise, we will rest on our brief.